1  John H. Gomez, Esq. (SBN 171485)
   David A. Fox, Esq. (SBN 254651)
2  **GOMEZ IAGMIN TRIAL ATTORNEYS**
   655 W. Broadway, Suite 1700
3  San Diego, California 92101
   Telephone: (619) 237-3490/Fax: (619) 237-3496
4  **Attorneys for Plaintiffs Lori Nunez and Luis Nunez, IV**

5  David S. Casey, Jr., (SBN 060768)
6  Wendy M. Behan, (SBN 199214)
   **CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
7  110 Laurel Street
8  San Diego, CA 92101
   Tel.: (619) 238-1811 / Fax: (619) 544-9232
9  **Attorneys for Plaintiff Frank Michell**

10 Douglas H. Swope, Esq. (SBN 137494)
11 **LAW OFFICE OF DOUGLAS H. SWOPE**
   110 West C Street, Suite 2000
12 San Diego, CA 92122
13 Tel.: (619) 231-8575 / Fax: (619) 231-6825
   **Attorney for Plaintiff Christopher Damitz**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK W. MICHELL, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA; and DOES 1 through 50, inclusive, <br><br> Defendants. <br><br> AND ALL OTHER RELATED AND CONCURRENT CLAIMS AND MATTERS | Consolidated Case No. 09cv387-CAB (BGS) <br><br> **PLAINTIFFS' AMENDED TRIAL BRIEF** <br><br> Date: September 3, 2013 <br> Courtroom: 4C <br> Judge: Hon. Cathy M. Bencivengo |

///

///

## I. INTRODUCTION

The United States Border Patrol trains its agents to pull over suspects and violators so as to not cause a safety hazard for oncoming traffic. It does not train its employees how to respond to traffic accidents and trusts them to use their common sense. On August 27, 2006, Border Patrol dispatched an employee to a traffic accident. The agent left his car hidden behind a blind corner, in the middle of a traffic lane, on a narrow two lane highway. His recklessness caused the death of Luis Nunez, leaving Plaintiff Lori Nunez without a husband, and Plaintiff Luis, IV without a father. The recklessness also caused major injuries to Plaintiffs Frank Michell and Chris Damitz. The agent left the scene without participating in any interviews or any investigation. Plaintiffs have suffered enormously and seek this Court's assistance in ensuring Defendant is held accountable for the harms it caused.

## II. STATEMENT OF FACTS

### A. Background

On August 27, 2006, United States Border Patrol Agent Scott Pinckney unnecessarily endangered motorists on State Route 94 (SR-94) by parking his official Border Patrol sedan in the roadway behind a blind corner. Agent Pinckney did not provide oncoming motorists with any warnings of his vehicle's presence on the other side of the blind curve. As a result of his decision, a series of motorcycle crashes occurred as weekend riders rounded the curve only to discover the roadway was blocked.[1]

SR-94 is an east west running two lane rural highway that winds its way through unincorporated Southeastern San Diego County. SR-94 actually begins at the Interstate 5 freeway near downtown San Diego. However, the rural portion of the highway relevant to this case begins at Jamacha Road in Rancho San Diego and winds its way eastbound

---

[1] Attached are two photographs of blind curve. (Exs. A & B, Photographs of the blind curve.) Also attached is defense expert Kerry Berg's diagram placing Agent Pinckney's Border Patrol sedan 125 feet east of the apex of the blind curve before the disastrous series of accidents occurred. (Ex. C, Kerry Berg's diagram)

approximately 50 miles to Campo and Highway 8 in Eastern San Diego County. The Border Patrol maintains a checkpoint on the westbound side of SR-94 approximately 1.5 miles from the blind curve.

Otay Lakes Road is an east west road that begins at Highway 125 in Eastlake, San Diego and winds its way to its terminus on SR-94, approximately a quarter mile west of the checkpoint. Some of the plaintiffs and other motorcyclists began their morning on the day of the accident at a Mobile service station located on Otay Lakes Road and Highway 125.

The Border Patrol checkpoint is staffed by many agents and serves as a vehicle stop and local station for all of the Border Patrol activities in the vicinity. The checkpoint stops all westbound traffic. Agents patrol SR-94 and the surrounding area to enforce various federal immigration and drug laws. The Border Patrol does not enforce California's Vehicle Code, but its agents are subject to it.

Border Patrol agents routinely stop various vehicles along SR-94 that are suspected of violating U.S. laws. The United States Border Patrol trains its agents to pull over suspects and violators so as to not cause a safety hazard for oncoming traffic. It does not train its employees how to respond to traffic accidents and trusts them to use their "common sense." (Ex. D, Cash Depo. 31:10-16.)

The speed limit on rural SR-94 is posted at 55 mph. Plaintiffs' expert conducted a speed survey near the blind curve that revealed the average speed for eastbound motorcycles was 47 mph and 42 mph for cars. Before the blind curve, there is a sign with an advisory speed of 35 mph.[2]

### B. August 27, 2006

On the morning of August 27, 2006, three individuals driving "cruiser" motorcycles drove eastbound past the blind curve. Two rode on Harley Davidson motorcycles and one rode on a similar Honda. One of the cruiser motorcyclists clipped an

---

[2] An "advisory" sign does not serve to regulate the speed limit restrictions as other regulatory signs do.

-3-                                                     09-CV-0387 CAB (BGS)
Plaintiffs' Amended Trial Brief

unidentified eastbound bicyclist east of the apex of the blind curve. Nobody was injured and there was no vehicle damage. Nevertheless, one of the cruiser motorcyclists rode back to the Border Patrol checkpoint to report the incident. Border Patrol Agent Brian Cash dispatched Agent Pinckney to the cruiser motorcycle versus bicycle incident to see what happened.

Agent Pinckney stated when he arrived at the scene, a Cal Fire truck had already stopped at the location to investigate. The fire truck traveled eastbound on SR-94 and ultimately parked on the westbound shoulder of the road. Agent Pinckney observed the Cal Fire firefighters and stopped his Border Patrol sedan west of the fire truck. He stated he left his vehicle behind the blind curve on the eastbound side of the road with all four tires in the lane of travel. Agent Pinckney could have parked on a nearby shoulder of the roadway. Having seen Cal Fire already there, he also could have done a U-turn and parked on a shoulder of the road *before* the blind corner.

Years after this tragedy, Defendant's accident reconstruction expert (Kerry Berg) met with Pinckney and some of the Cal Fire personnel, who advised of Agent Pinckney's position on SR-94. Mr. Berg placed Agent Pinckney's vehicle approximately 125 feet east of the apex of the blind curve. It is illegal under Section 22504 of California's Vehicle Code to park in the middle of a highway, as well as in a place where the vehicle cannot be seen from 200 feet. After Agent Pinckney parked behind the blind corner, and created a treacherous road hazard, he got out of his vehicle and approached a pedestrian standing on the north median. As Agent Pinckney spoke with the pedestrian, at least two cars pulled up behind his Border Patrol sedan and stopped.

At the same time, Plaintiffs were riding eastbound on SR-94 among other riders. SR-94 is a popular rural highway that is enjoyed by many weekend motorists and hundreds of motorcyclists. As riders rounded the subject matter blind curve, they quickly encountered the unwelcome surprise of stopped cars, directly in their path, that were stuck behind Agent Pinckney's parked Border Patrol sedan. Having only a split second to react, Plaintiffs had no choice but to drive their motorcycles off the roadway or into each

other. Essentially, as more and more motorcycles entered the blind curve, a chain-reaction collision occurred that seriously injured several riders, including Plaintiffs Frank Michell and Christopher Damitz, and killed Luis Nunez. Mr. Nunez's widow and son bring the instant wrongful death action. Other riders were spared such hardship. They received some form of warning before the curve from other riders and oncoming vehicles going westbound flashing lights.

Agent Pinckney claims his decision to park his Border Patrol sedan in the road was a purposeful effort to block eastbound traffic from colliding with multiple motorcycles that were, according to him, already down in the roadway at the time he arrived. Yet, not a single witness, other than Agent Pinckney, can testify that there were motorcycles in the roadway at the time of his arrival. In fact, Agent Pinckney's account is refuted by the testimony of Cal Fire officials and the three cruiser motorcyclists that arrived on scene before Pinckney. (Ex. E, Ugalde Depo, 118:12-15) ("He wasn't trying to stop traffic as if he was trying to preserve any scene. It was more or less that's where he parked and got out of the vehicle.").

The United States retained a Border Patrol procedures expert who in deposition testimony explained if there are no motorcycles down in the roadway at the time Agent Pinckney arrived, Pinckney's actions cannot be justified as a matter of Border Patrol policy or procedure, or even common sense. "Policies, procedures, or common sense, I can't see any reason, … for him to do that." (Ex. F, McDonnell Depo, 49:23-52:8) Plaintiffs' expert agrees and finds that even assuming there were bikes down in the road the reasonable person would position his vehicle *before* a blind curve, and never hide it behind.

## III. CAUSES OF ACTION

Plaintiffs bring three causes of action: (1) negligence for failing to act as a reasonably careful person would in the same situation; (2) negligent hiring, training, supervision, and retention; and (3) negligent infliction of emotional distress. Plaintiffs contend the relevant California jury instructions include: CACI 400(Negligence – Factual

Elements); CACI 401 (Basic Standard of Care); CACI 405 (Comparative Fault); CACI 406 (Apportionment of Responsibility); CACI 418 (Negligence Per Se); CACI 426 (Negligent Hiring, Supervision, or Retention of Employee); CACI 430 (Causation – Substantial Factor); CACI 1620 (Negligent Infliction of Emotional Distress).

## IV. OUTSTANDING LEGAL ISSUES

### A. Defendant are Negligent as a Matter of Law

Federal courts apply California's presumption of negligence, or "negligence per se" jury instruction when a defendant violates a statute or regulation and harms another. *Sanchez v. U.S.*, 803 F. Supp. 2d 1066 (C.D. Cal. 2011) (finding defendant FBI agent negligent as a matter of law for failing to yield to a pedestrian in a crosswalk in violation of the California vehicle code); *Weaver v. U.S. Dept. of Agriculture*, No. CV 10–1523 RSWL, 2013 WL 1414586, at * (E.D. Cal. Apr. 8, 2013) (finding defendant U.S. Forest Service driver should be presumed negligent for failing to properly change lanes in violation of the California vehicle code ); *Snyder v. Enter. Rent-A-Car Co.*, 392 F. Supp. 2d 1116, 1123-27 (N.D. Cal. 2005) (finding defendant rental car company was presumed negligent for renting a vehicle to an unlicensed driver in violation of the California vehicle code).

#### 1. Defendant is Presumed Negligent for Parking A Vehicle Behind a Blind Corner in the Middle of a Highway in Violation of Section 22504 of the Vehicle Code

Under the doctrine of negligence per se, negligence is presumed if the plaintiff establishes four elements:

(1) the defendant violated a statute, ordinance, or regulation of a public entity;

(2) the violation proximately caused death or injury to person or property;

(3) the death or injury resulted from an occurrence of the nature of which the statute…was designed to prevent; and

Plaintiffs' Amended Trial Brief

(4) the person suffering…was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

*Sanchez,* 803 F. Supp. 2d. at 1070.

In *Sanchez*, the district court applied the presumption of negligence when a defendant FBI agent struck a pedestrian in a marked crosswalk with her vehicle. *Id.* The officer failed to yield the right of way to a pedestrian in violation of Section 21950(a) of the vehicle code. *Id.* The officer's violation of the vehicle code proximately caused plaintiff's injuries, which included "permanent brain damage, and severe mental and physical deficiencies." *Id.* The court noted that "there is no question the statute was designed to protect pedestrians from death or injury on California's streets and highways. *See* Pedestrian Safety Act of 2000 § 2,2000 Cal. Legis. Serv. 833 (West 2000)." *Id.* The court found that plaintiff, as a pedestrian, was within the class of persons the statute was enacted to protect, and applied the presumption of negligence against defendant. *Id.*

Likewise, here, Defendant is presumed negligent for parking a vehicle just behind a blind corner in the middle of a highway in violation of Section 22504 of the Vehicle Code. Section 22504 states:

> Upon any highway in unincorporated areas, a person shall not stop, park, or leave any standing vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or leave the vehicle off such portion of the highway, but in every event . . . a clear view of the vehicle shall be available from a distance of 200 feet in each direction upon the highway.

Put simply, (1) it is illegal to park a car in the middle of a road when it is practicable to park off the road, and (2) if you have to park the car in the middle of a road, you must park the car in an area where it can be clearly viewed from 200 feet in each direction. "A violation of this section, designed to protect persons traveling on the highway, constitutes negligence by the operator of the vehicle." *Thomson v. Bayless*, 24 Cal. 2d 543, 546 (1944) (California Supreme Court affirming lower court's finding that defendant was negligent for violating the predecessor of section 22504 and explaining

that defendant failed to meet its burden of showing that it was not practicable to park off the traveled and paved portion of the highway).

Agent Pinckney stopped and parked his vehicle in the middle of a narrow two-lane highway. He parked immediately behind a blind corner of that highway. He parked in such a treacherous spot when it was absolutely practicable to stop and park on the shoulder of the road, as other motorcyclists and responding officials did that day. In fact, in his own deposition, Pinckney admitted: (1) as a Border Patrol agent, he is not above the California vehicle code; (2) he parked his car with all four wheels in the eastbound lane; (3) nothing prevented him from parking on the shoulder of the highway; and (4) subsequently, multiple agents told him he should have parked on the shoulder of the road. (Ex. G, Pinckney Depo, 57:5-58:4; 107:1-12; 23:17-24.); *see also* (Ex. H, Ransdell Depo, 120:14-21;132: 24-133:1) (stating: (1) that after the accident with bicycle and before responding officers arrived, the "cruiser" motorcycles parked on the north shoulder of the road out of traffic, and (2) there was room for Agent Pinckney to have parked his sedan on the north shoulder with the other motorcycles and fire truck.); (Ex. I, Marugg Depo, 82:10-17; 83:3-12 (stating he made every point to not create a hazard when parking his fire truck, noting he tried to park in the most visible spot he could, and explaining he would not stop in the middle of a corner on SR-94 because he would not want to create a hazard to oncoming traffic); (Ex. J, Williams Depo, 62:19-63:9) (stating "cruiser" bikes moved to the north shoulder after the fire truck arrived); (Ex. E, Ugalde Depo, 54:2-9) (stating that upon returning from border patrol checkpoint he parked his bike with the other two motorcycles on the north shoulder of the road.)

In addition, Agent Pinckney's recklessness in leaving his car immediately behind a blind corner prevented oncoming motorists from having a "clear view … from a distance of 200 feet" of his vehicle, or those vehicles backed up behind his vehicle. (Ex. K, Valadez Depo, 46:23-47:15) (stating Border Patrol vehicle parked at the apex of the

Plaintiffs' Amended Trial Brief

curve); (Ex. L, Berg Depo, 149:5-7) ("the distance from the apex [of the curve] to the Pinckney vehicle is 125 feet.").[3]

Finally, there should be no dispute that this vehicle code section exists to prevent the devastation that occurred here. Traveling motorcycles did not have sufficient time to see Agent Pinckney's parked vehicle, or the vehicles backed up behind it, while coming around the blind corner. As individuals travelling on the highway, Messrs. Nunez, Damitz, and Michell, are the very individuals this statute was designed to protect. Thus, Defendant is negligent as a matter of law for violating Section 22504, creating the hazard, and causing this tragedy.

### 2. Section 21055 Is Inapplicable. Even If It Applied, The Code Section Would Only Serve as an Affirmative Defense to the Presumption of Negligence

Defendant may take the position that Agent Pinckney was free to leave his vehicle wherever he wished. Defendant has suggested Agent Pinckney could park behind a blind corner in violation of section 22504 because he is immune from any liability under Section 21055 of the Vehicle Code. However, this position fails for at least three reasons: (1) this section is inapplicable to parked vehicles; (2) the section serves as an affirmative defense, and the Defendant cannot meet its burden of proof; and (3) even if Defendant met its burden of proof, it would only serve to rebut the presumption of negligence Plaintiffs' have already established. In essence, even if the Court found the exception applied, and that Defendant satisfied its burden on the affirmative defense, ordinary negligence principles would still apply.

Section 21055 states that the driver of an authorized emergency vehicle would *only* be exempt from certain sections of the Vehicle Code, including 22504 (parking in the middle of a highway):

---

[3] As stated, Defendant's expert states Pinckney parked his vehicle 125 feet from the apex of the blind curve. Upon a site-inspection, the Court will plainly see how it was impossible for oncoming motorists to have a clear view of his vehicle from 200 feet.

> (1) "If the vehicle *is being driven* in response to an emergency call or while engaged in rescue operations or is being used in the immediate pursuit of an actual or suspected violator of the law or is responding to, but not returning from a fire alarm . . ."; ***and*** (2) if the driver of the vehicle sounds a siren as may be reasonably necessary ***and*** the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians (emphasis added).

If applicable, the section provides an affirmative defense for defendant. *Washington v. San Francisco*, 123 Cal.App.2d 235, 242 (1954) (noting the predecessor section serves as an affirmative defense and that defendant has the "burden of proving the necessary compliance with its provisions")

In California, a uniform does not excuse reckless parking decisions that result in injuries. For example, in *Reed v. City of San Diego*, a police officer pulled over a motorist driving on a highway at nighttime. *Reed v. City of San Diego*, 77 Cal. App. 2d 860, 861, (1947). The driver, Mr. Reed, pulled all the way off the paved part of the highway and turned off his lights. *Id.* The police car stopped behind this car, but did not pull completely off the paved road. The policeman left about half of his vehicle on the pavement. *Id.* Subsequently, an oncoming car struck the police vehicle, knocked it forward into Mr. Reed's stopped car, and caused injuries to the occupants of the oncoming car. *Id.*

The City argued that the police officers were exempt from liability based on the predecessor to Cal. Veh. Code 21055. *Id.* at 862. Ultimately, the court disagreed, found that leaving the police vehicle parked in such a manner was unnecessary and dangerous, and held the City liable for the harms the policeman caused. *Id.* at 868.

Here, similarly, section 21055 does not exempt Defendant from liability when Pinckney unnecessarily left his vehicle in the road behind a blind corner. First, the statute states it applies to when the car "is being driven," such as where emergency vehicles are moving through traffic in response to emergency calls, or in immediate pursuit of law violators. Cal. Veh. Code § 22504. This disaster occurred *after* Pinckney had driven his vehicle, left it behind the blind corner, and caused other vehicles to back

Plaintiffs' Amended Trial Brief

up behind him. *Reed*, 77 Cal.App.2d at 863 (recognizing it is "arguable whether this exemption is even applicable where the vehicle has stopped and the reasons for haste have ended").

Second, there was no "emergency" when he arrived. The important factor in determining whether or not Pinckney was responding to an emergency within the meaning of Section 21055 is whether *he* "reasonably believed that he was responding to an emergency call." *Gallup v. Sparks-Mundo Engineering Co.,* 43 Cal.2d 1, 8 (1954). Pinckney's supervisor, Brian Cash, has stated he asked Agent Pinckney to go see what happened and that he did not even know if people were injured or not. (Ex. D, Cash Depo. 28:12-23.) Agent Pinckney stated his superior deployed him out to the scene of the incident after motorists had mentioned there had been an accident. (Ex. G, Pinckney Depo, 35: 15-16.) He believed that his role at the scene of the incident would be to "render assistance as needed" (Ex. G, Pinckney Depo, 40:11) and he only responded with "some urgency." (Ex. G, Pinckney Depo, 50:12.) Furthermore, at the time Pinckney arrived, he was aware that CDF was already at the scene. (Ex. G, Pinckney Depo, 56:11-15.)

Third, Pinckney did not use his sirens. (Ex. G, Pinckney Depo, 58:8-9.) The statute requires sirens be on as reasonably necessary. Pinckney created a treacherous hazard that was hidden from view behind a blind corner. Defendant cannot meet its burden to prove that it was *not* reasonably necessary to at least notify oncoming traffic about his own hazard with sirens.

Sirens could not have been more necessary in this instance. Pinckney parked behind a sharp blind corner on a narrow two lane highway. There was no chance of seeing his vehicle, or the cars he caused to be backed up behind him, from 200 feet or anywhere close to that. The least Agent Pinckney could have done was to sound his sirens so that those travelers facing the blind corner could have at least had a chance of hearing there was such a hazard up ahead. With a simple flip of a switch, Pinckney could have helped alert travelers of the hazard he created behind the blind curve. He did not

-11- 09-CV-0387 CAB (BGS)

Plaintiffs' Amended Trial Brief

and Plaintiffs suffered enormous harms that will stay with them forever. Accordingly, Defendant cannot satisfy their burden on this prong and cannot benefit from this limited exception.

Fourth, Defendant cannot establish its burden to show that Pinckney's emergency lights were on as the witnesses are split on this issue. At least seven witnesses have provided testimony suggesting his emergency lights were not on.[4]

In sum, the Section 21055 is inapplicable, and even if it was, Defendant cannot satisfy its burden to meet each of its prongs to rebut the presumption of negligence.

### 3. Even if Section 21055 Applies, and Defendant Can Satisfy Its Burden on Each Prong of the Affirmative Defense, Ordinary Negligence Principles Apply

In the event the Court finds Section 21055 applicable, and that Defendant satisfies each of the prongs in the affirmative defense, ordinary negligence principles apply. The very next section of the vehicle code, section 21056 of the vehicle code states: "section 21055 does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor protect him from the consequences of an arbitrary exercise of the privileges granted in that section." *See also City of Sacramento v. Superior Court*, 131 Cal. App. 3d 395, 403 (1982) ("The purpose of Vehicle Code section 21055 is to avoid the presumption of negligence that arises from a violation of a safety rule or regulation…If the driver complies with Vehicle Code section 21055…no presumption will arise and ordinary negligence principles apply."); *see also Torres v. City of Los Angeles* 58 Cal. 3d 35, 47 (1962) (finding that the emergency vehicle

---

[4] Ex. E, Ugalde Depo, 59:15-23; 84:20-85:5; 104:18-22 (stating he believed the lights were off); Ex. M, Nguyen Depo, 63:2-8; 102:21-23 (cannot recall lights on top of the vehicle); Ex. N, Villareal Depo, 105:21-23 (does not recall activated lights on the Border Patrol vehicle); Ex. O, West Depo 126:23-25 (same); Ex. P, Lou Depo, 173:3-9 (same); Ex. I, Marugg Depo, 118:13-23 (same); Ex. H, Ransdell Depo, 87:10-10; 128:2-8; 139:24-140:1 (same); Ex. M, Cash Depo, 35:3-10 (does not remember Pinckney's lights on when he left the station).

exemption "does not in any manner purport to exempt the employer from liability due to negligence attributable to the driver's failure to maintain that standard of care imposed by the common law.").

In the end, the FBI, Border Patrol, and all federal agents, are not above California law, including the vehicle code. If they violate it, they are presumed negligent, unless and until they prove multiple prongs of an applicable affirmative defense. Even if successful on the affirmative defense, Defendant is still held to the same negligence standard as all Californians.

### B. Defendant are not afforded qualified immunity under Health & Safety Code Section 1799.102 because Agent Pinckney did not render emergency medical Services

Defendant have suggested that Section 1799.102 immunizes Agent Pinckney's negligence. That statute, contained in the Emergency Medical Services subdivision, provides in relevant part:

> (a) No person who in good faith, and not for compensation, renders emergency medical or nonmedical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission.

Cal. Health & Safety Code § 1799.102.

Defendant's reliance on section 1799.102 is misplaced for several reasons. First, Agent Pinckney did not render any care at all as the cyclist has already left on his bicycle by the time he arrived. Instead, he parked his vehicle behind a blind corner in the eastbound land of SR 94, creating a disastrous tragedy that resulted in the need for actual emergency care.

The California Supreme Court addressed the scope of Health and Safety Code Section 1799.102 in *Van Horn v. Watson*, 45 Cal.4th 322 (2008). In *Van Horn*, a passenger in a car involved in a traffic accident sued an individual who removed her from a car. The plaintiff passenger alleged that defendant's actions caused permanent injury and rendered her a paraplegic. *Id.* at 325. Defendant argued that Section 1799.102

-13-	09-CV-0387 CAB (BGS)

Plaintiffs' Amended Trial Brief

applied broadly to both medical *and nonmedical care* rendered at the scene of any emergency. *Id.* at 327. Plaintiff argued that the statute applies narrowly to only those who render medical care at the scene of a medical emergency. *Id.*

The court held that the narrow construction set forth by the Plaintiff was correct. *Id.* at 327. The court explained that section 1799.102 is located in division 2.5 of the Health and Safety Code. That division, titled "Emergency Medical Services," was enacted as the Emergency Medical Services System and the Pre-hospital Emergency Medical Care Personnel Act ("Act"). The court found that the location of Section 1799.102 in the Emergency Medical Services division and the title of the Act showed section 1799.102 only served to immunize the provision of emergency *medical* care at the scene of a medical emergency. *Id.* at 334. (emphasis in original).[5]

In the instant case, Agent Pinckney understood he was dispatched to the scene of the incident to assess the situation, "determine" if anyone needed emergency medical care, and to actually control traffic. (Ex. G, Pinckney Depo, 41:14-17; 45:7-9; 45:10-46:2). Agent Pinckney never rendered "emergency medical care" *or even any nonmedical care* at all because the bicyclist had taken off before he arrived. At no point after parking his vehicle behind the blind corner did Agent Pinckney render, or attempt to render, any First Aid, CPR, or other type of care to anyone. In fact, Agent Pinckney stated he "did not observe anyone needing immediate and catastrophic level medical treatment" when he arrived at the scene. (Ex. G, Pinckney Depo, 109:13-16). Additionally, not one witness has stated Agent Pinckney provided any help, medical, or nonmedical, to anyone. Therefore, Defendant's negligence is not immunized under section 1799.102 or any subsequent statutes because Agent Pinckney never provided any form of assistance at all.

///

---

[5] The statute was later amended to provide immunity for nonmedical *care*, but that does not affect the applicability of *Van Horn* to Pinckney's actions in 2006. It is also inapplicable as Pinckney provided no "care" whatsoever to anyone.

Moreover, Defendant is not afforded immunity under 1799.02 because Agent Pinckney was not at "the scene of an emergency." In *Van Horn*, the Court clarified the meaning of "at the scene of an emergency" in section 1799.02. The Court held that "scene of an emergency" means a scene where "an individual has a need for *immediate medical attention*." *Van Horn*, 45 Cal.4th at 329 (italics in original). Here, by Agent Pinckney's own admission, he does not remember "anyone needing immediate and catastrophic level medical treatment" when he arrived on scene. (Ex. G, Pinckney Depo, 109:13-16). Therefore, section 1799.02 is inapplicable.

Dated: July 18, 2013  **GOMEZ IAGMIN TRIAL ATTORNEYS**

By: /s/David A. Fox
David A. Fox, Esq.
Attorneys for Plaintiffs
Lori Nunez and Luis Nunez, IV
dfox@gomeziagmin.com

Dated: July 18, 2013  **CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**

By: /s/Wendy M. Behan
Wendy M. Behan, Esq.
Attorneys for Plaintiff Frank W. Michell
wbehan@cglaw.com

Dated: July 18, 2013  **LAW OFFICES OF DOUGLAS H. SWOPE**

By: /s/Douglas H. Swope
Douglas H. Swope, Esq.
Attorneys for Plaintiff Christopher Damitz
dhswope@yahoo.com